**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LEROY WOODS,**

    **Plaintiff,**

v.                                                          Case No. 8:08-cv-1095-T-TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                  /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was thirty-two years of age at the time of his administrative hearing in February 2007. He stands 5' 9" tall. Plaintiff has a ninth-grade education. His past relevant work was as a cook, quality control houseman at a resort, and painter. Plaintiff applied for disability benefits and Supplemental Security Income payments in March 2004 (protective filing date), alleging disability as of January 31, 2003, by reason of emotional problems, a

steel rod in his right leg that causes pain, and an inability to spell well.[1] The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf.[2] In essence, Plaintiff testified he was unable to work due to the pain in his leg. He testified that he has a history of a gunshot wound to his leg for which he had surgery. Plaintiff testified that his leg was "killing" him at the hearing. He recently obtained insurance through the Hillsborough County Health Care Plan. Prior to that, he would go to the emergency room of Tampa General Hospital for treatment of his leg. According to Plaintiff, he has no other physical problems other than his leg.

As for emotional problems, Plaintiff testified that he has had them his entire life. He completed school through the ninth grade, with grades five through nine being at a special school for emotionally handicapped children. He stopped attending school at age fifteen. At age nineteen, Plaintiff went to prison for two and a half years for battery on an HRS employee. By his account, he does not react to situations as others do. Plaintiff testified the reason he lost all of his past jobs was due to getting upset or fighting with somebody. He gets along with family members and his girlfriend as long as he does not "stay around them that long." He estimated he has been arrested about twelve times for battery on his girlfriend. Records from the Hillsborough County Sheriff's Office reflect six charges of battery in the

---

[1] Plaintiff also applied for benefits in 2000. (R. 88-105, 121). The claim was denied initially, and it does not appear that Plaintiff appealed the decision. (R. 121).

[2] A hearing was initially scheduled for August 3, 2006. At that time, Plaintiff appeared without counsel. Prior to Plaintiff testifying, it was agreed that the hearing be postponed to allow Plaintiff to retain counsel. (R. 369-77).

2

last few years. According to Plaintiff, he has also been in fights for which he was not charged. While he was attempting to get mental health treatment in October 2006, he was arrested for fighting with another individual at the clinic. Controlling his temper and getting into physical confrontations with people has been a problem his entire life. Plaintiff admitted past use of illegal drugs, but denies using drugs now. He further denies having a problem with drugs or alcohol.

Regarding his past work, Plaintiff stated that he worked off and on as a cook at the Press Box Restaurant from 1995 to 2000. The last time he worked there was a brief period in 2006, but he had to stop because his leg was hurting him and he could not keep up with the work.[3] Although his employer would let him sit down during his breaks and when he would "do the fries," he eventually was fired. At the time, Plaintiff was on pain medication. Even with the Percocet, he could not stand longer than six minutes. He testified that his employer was trying to help him, but that he could not keep up. He did not file for unemployment compensation at that time. Plaintiff testified that he worked at Longhorns in 2001 until 2002 or 2003. Plaintiff is not currently working.

Since becoming disabled in January 2003, Plaintiff has supported himself with the help of family, friends, and neighbors. Plaintiff testified that he is single with three minor children. The children live with their grandfather. Plaintiff does not have his own place to live, but rather lives with siblings. He does not drive a car, nor does he have a license.

Regarding his physical ability, Plaintiff testified that he can stand for no longer than six minutes before having to shift his weight and stand on one foot. He testified that he can

---

[3]The record reveals Plaintiff fractured his right ankle and fibula in April 2006. (R. 350-62).

3

sit for no longer than five minutes before he needs to stand up and walk around. If he alternates between sitting and standing, he could only go about an hour and a half before needing to lie down in order to take all pressure off of his leg and elevate it because of the swelling. Sitting with his leg elevated is not comfortable because it makes his hip hurt. Plaintiff denies being able to lift twenty-five pounds. While he admits to having the muscle strength to lift fifty pounds, he cannot carry it anywhere because he cannot put the pressure on his leg. Because of the pain in his leg, he estimates the most he can lift and carry is five to ten pounds. When asked if he could return to work if he was given a job in which he could sit most of the time and did not have to be around a lot of other people, Plaintiff testified that he would not be able to do that. (R. 380-93).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of March 29, 2007, the ALJ determined that while Plaintiff has severe impairments related to remote history of gunshot wound to the right leg (with open reduction internal fixation), chronic right leg pain, history of alcohol and marijuana dependence, borderline intellectual functioning, and anti-social personality disorder, he nonetheless had the residual functional capacity to perform medium exertional work that did not require (1) more than occasional postural limitations for climbing ladders and scaffolds and crawling, (2) more than occasional exposure to the general public, or (3) the ability to carry out detailed instructions or work tasks. Upon this determination, the ALJ concluded that Plaintiff could perform his past relevant work as a cook both as performed previously and as performed generally in the national economy. Upon this conclusion, the Plaintiff was

4

determined to be not disabled. (R. 20-29). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in failing to develop the record with regard to crucial matters in this case; and

(2) The Commissioner erred in finding that the Plaintiff could return to past work as a cook.

6

By his first argument, Plaintiff alleges generally that the ALJ failed to develop the record and fully and adequately consider the severity of all impairments at the second step of the sequential evaluation. More specifically, Plaintiff faults the ALJ for not finding that his obesity constituted a severe impairment at step two and addressing it throughout the remaining steps of the evaluation process. In support of his claim, Plaintiff points to record citations reflecting his height of 5'9" and weight of 287 or 284 pounds. Plaintiff contends this translates to a body mass index ("BMI") over 40, which is considered extreme obesity under Social Security Ruling ("SSR") 02-1p. According to Plaintiff, the ALJ's failure to address his obesity resulted in additional errors because the ALJ then could not adequately consider the combined effect of his impairments or the credibility of his subjective allegations. In light of these errors, Plaintiff urges that the ALJ's finding that he could return to past work is not supported and a remand is required for complete development of the record and correct application of legal principles. (Doc. 21 at 6-9).

In response, the Commissioner argues that Plaintiff fails to show that the ALJ's alleged error in failing to develop the record resulted in clear prejudice or unfairness such that a remand is warranted. Additionally, he notes that Plaintiff did not allege he was disabled due to obesity or explain how the ALJ failed to develop the record in this regard. As for any error at step two, the Commissioner urges there was none because the ALJ properly found that Plaintiff had several severe impairments and proceeded to the subsequent steps. As for the remaining steps, the Commissioner contends no error has been demonstrated because Plaintiff fails to point to any medical evidence which indicates that his obesity (or other impairments) resulted in greater physical limitations than those identified by the ALJ. The Commissioner

also contends that the medical and other evidence of record provides substantial support for the ALJ's residual functional capacity determination. (Doc. 22 at 5-10).

The Social Security Regulations set forth a five-step sequential evaluation process the Commissioner must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the claimant must show that he has a medically severe impairment or combination of impairments. *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if a claimant can show that his impairment meets or is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. *Id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant is unable to demonstrate such, step four requires the claimant to show that his impairment or combination of impairments prevents him from performing his past work. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five. *Phillips*, 357 F.3d at 1241, n.10. At step five, the Commissioner must show that the claimant retains the residual functional capacity to perform work in the national economy, given his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. 20 C.F.R. §§ 404.1520, 416.920. Here, the ALJ concluded the evaluation at step four after finding that Plaintiff was able to perform past work and therefore not disabled.

It is well-settled that the ALJ has a basic duty to develop a full and fair record.[4] *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.*

Upon a careful review of the record, I am unable to conclude that the ALJ committed reversible error in the manner alleged by Plaintiff. Here, the decision reflects that the ALJ considered obesity in general, noting that Plaintiff was "a 33 year old, 5'9" tall, mildly obese individual who weighs approximately 230 pounds."[5] (R 21). Thus, contrary to Plaintiff's assertion, the ALJ did not wholly ignore or fail to consider obesity. While Plaintiff is correct that the ALJ did not address with specificity whether obesity constituted a severe impairment at step two of the evaluation, by implication, the ALJ determined that it did not. Further, as the Commissioner correctly notes, any error at this step is not reversible because the ALJ found that Plaintiff suffered from other severe impairments, namely, remote history of gunshot wound to the right leg, chronic right leg pain, history of alcohol and marijuana

---

[4] Nonetheless, it is the claimant's burden of proving that he is disabled and he is responsible for producing evidence in support of his claim. *See Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)).

[5] The ALJ apparently relied on Plaintiff's reported height and weight from a Disability Report Plaintiff completed in February 2000. *See* (R. 88). In the Disability Report Plaintiff completed in 2004, Plaintiff reported that he weighed 240 pounds. (R. 106).

9

dependence, borderline intellectual functioning, and anti-social personality disorder (R. 21). *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). Whether the ALJ's failure to address obesity with particularity at the remaining steps of the evaluation necessitates a remand is a more difficult question. For the reasons that follow, I find that it does not.

At the outset, I must reiterate that it is Plaintiff's burden of proving disability at steps one through four of the sequential evaluation. *See Ellison*, 355 F.3d at 1276. And, while I recognize that the ALJ has a concomitant duty to fully and fairly develop the record, in this case Plaintiff was represented by able counsel at the administrative hearing and counsel conducted no inquiry with respect to obesity or obesity-related limitations.[6] Nor did Plaintiff allege disability due to obesity or testify that his weight caused his pain to worsen or further complicated his ability to perform any physical activities.[7] As such, it is hard to fault the ALJ for failing to elicit testimony or further develop the record with respect to obesity.[8] This is particularly true given that the record evidence of the same is limited to two notations reflecting Plaintiff's weight recorded during consultative examinations and two comments

---

[6] The same attorney represents Plaintiff on the instant appeal.

[7] Plaintiff noted in his 2004 Disability Report that going down stairs was painful due to his body weight, although going up was okay because he could put weight on his arms. (R. 106).

[8] To the extent Plaintiff broadly asserts that the ALJ failed to consider the severity of all impairments, he points to no other impairment that should have been considered but were not.

10

that Plaintiff was "obese."[9] No doctors, examining or otherwise, noted obesity related concerns or limitations. In any event, I agree with the Commissioner that Plaintiff fails to demonstrate prejudice resulting from any failure to specifically address or discuss obesity at the remaining steps of the evaluation process (steps three and four). There is absolutely no record support for finding that Plaintiff's impairments or combination thereof met or equaled that of a listed impairment at step three, and Plaintiff does not argue or demonstrate otherwise. As for the ALJ's findings at step four (aside from his finding that Plaintiff could perform past relevant work as a cook, which is addressed below), it is worth noting that Plaintiff does not specifically challenge the ALJ's credibility and residual functional capacity findings. Nor does Plaintiff assert particular obesity-related functional limitations that the ALJ should have considered but did not. While Plaintiff suggests the ALJ may have more fully credited some of his subjective complaints had obesity been considered, that suggestion is not persuasive given Plaintiff's failure to challenge the ALJ's credibility determination. Finally, Plaintiff's citation to SSR 02-1p does lend minimal support to his claim. Undoubtedly, the record would have been clearer had the ALJ articulated specific considerations of each impairment at each step of the disability process. However, Plaintiff ignores that the ruling also recognizes that the three levels of obesity in the clinical guidelines do not correlate with any specific degree of functional loss and that obesity may or may not increase the severity or functional limitations of the other impairments. *See* SSR 02-1p, 2000

---

[9]On consultative examination in June 2000, it was reported that Plaintiff weighed 287 pounds. (R. 214). On similar examination in April 2004, it was reported that Plaintiff weighed 284 pounds. (R. 257). The only other record evidence of obesity I found was a notation in 1990 that Plaintiff was "moderately obese," (R. 187), and a notation in May 2004 that Plaintiff was an "obese individual." (R. 261). Of these four, only two are within the period of time pertinent to Plaintiff's claim.

11

WL 628049, at *2, 6 (S.S.A.). In this case, there is adequate support for the ALJ's determination that it did not. In sum, for the reasons set forth above, Plaintiff is not entitled to relief on this claim.

By his second argument, Plaintiff first urges that the ALJ could not have accurately determined his ability to perform past work because the ALJ failed to consider all of his disabling conditions (i.e., obesity). Next, he urges that the ALJ failed to fully and adequately consider the requirements of his past work compared to his abilities. In support, Plaintiff asserts it was unclear what type of cook position the ALJ contemplated as past work because there was no reference to the Dictionary of Occupational Titles ("DOT"). Assuming, arguendo, that the ALJ relied on the position referenced in DOT § 313.361-014, Plaintiff contends he could not perform such work because it has a specific vocational preparation ("SVP") level of 7, which requires two to four years of training or experience including the abilities to make judgments and decisions; attaining precise set limits, tolerances, and standards; and the ability to perform a variety of tasks and duties. By this argument, those requirements exceed Plaintiff's ability because the ALJ found he was "precluded from carrying out detailed instructions or work tasks." Plaintiff also notes that both of the state agency consultants found that he would have moderate difficulty in accepting instructions and responding appropriately to criticism from supervisors, limitations which also appear to preclude him from performing his past work as a cook. According to Plaintiff, the ALJ should not have decided the issue himself; rather, he should have obtained testimony from a vocational expert ("VE") before determining that Plaintiff could perform his past relevant work. In sum, Plaintiff urges that the case should be remanded for further development. (Doc. 21 at 10-12).

12

In response, the Commissioner maintains that the ALJ correctly found that Plaintiff could still perform his past work as a cook. Contrary to Plaintiff's assertion, the Commissioner notes that the ALJ explicitly indicated what type of cook job was contemplated because he cited to DOT § 315.361-010 (which is not the provision to which Plaintiff cites). Relying on that provision, which requires medium exertional work, the Commissioner contends that it is consistent with the physical limitations in the ALJ's residual functional capacity determination. He contends further that the job referenced by that provision is not inconsistent with the mental limitations in the ALJ's residual functional capacity assessment because it does not require an individual to carry out detailed instructions or tasks; rather, it requires only the ability to "apply commonsense understanding to carry out instructions." And, the Commissioner notes that Plaintiff does not cite any authority demonstrating that such equates with a requirement to carry out detailed instructions and tasks. As for Plaintiff's assertion about the SVP level of the job, the Commissioner urges that a SVP only indicates how long it would take an individual to learn a job.[10] With regards to VE testimony, the Commissioner asserts that it is not required at step four and thus the ALJ did not err by determining that Plaintiff could perform past work at that step without obtaining the assistance of a VE. Finally, the Commissioner contends that substantial evidence supports the mental limitations identified by the ALJ in his RFC determination. (Doc. 22 at 10-13).

Here, the ALJ decided Plaintiff's claim at the fourth step of the sequential process. At this step, the ALJ must determine whether the claimant is capable of performing his past

---

[10]The Commissioner does not respond to Plaintiff's summary assertion about "the abilities to make judgments and decisions; attaining precise set limits, tolerances, and standards; and the ability to perform a variety of tasks and duties."

13

relevant work.[11] The review at this step involves the assessment of a claimant's residual functional capacity and requires consideration of the physical and mental demands of his former work. In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant [him]self is capable of doing before [the ALJ] determines that [h]e is able to perform [his] past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986). However, at this step, the burden is still upon the Plaintiff to prove that he cannot do this past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).

A determination that a claimant can perform his past relevant work, and thus is not disabled, is appropriate where the claimant retains the residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-62, 1982 WL 31386, *3 (S.S.A.);[12] SSR 82-61, 1982 WL 31387, * 2 (S.S.A.). Where it is determined that a claimant can perform his past job as he performed it, the claimant's statements regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. SSR 82-63 at *3;

---

[11]The regulations define "past relevant work" as work performed within the past fifteen years that was substantial gainful activity and lasted long enough for the claimant to learn to do it. *See* 20 C.F.R. §§ 404.1560(b), 416.960(b).

[12]Social Security Rulings are binding on all aspects of the Social Security Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sep. 1981).

*see also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be sufficient to furnish information about past work). And, where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT. *See* SSR 82-61 at * 2. While the claimant bears the burden at this step of demonstrating an inability to return to his past relevant work, the ALJ has a concomitant duty to develop a full record in this regard. *Lucas*, 918 F.2d at 1574 n. 3 (citing *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *Nelms*, 803 F.2d at 1165).

As set forth above, the ALJ in this case made the following findings at step four of the sequential evaluation. First, he determined that Plaintiff:

> can do a wide range of medium work activities.[13] The claimant can lift and carry 50 pounds on an occasional basis, and 25 pounds frequently. He is able to stand or sit as many as 6 hours per day, and has occasional postural limitations for climbing (ladders and scaffolds) and crawling. Due to emotional limitations and his limited education, the claimant has mildly limited ability to maintain social functioning and moderately limited ability to maintain concentration ability. Consequently, the claimant is precluded from more than occasional exposure to the general public, and is precluded from carrying out detailed instructions and tasks.

(R. 22). Next, the ALJ found that Plaintiff could perform his past relevant work as a cook, both as performed previously and as performed generally in the national economy. (R. 28-29). In so finding, the ALJ stated that, "[a]ccording to the DOT, the job of cook (DOT

---

[13]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

15

#315.361-010) is medium, semiskilled work." (R. 29). Plaintiff challenges several aspects of these findings.

Although this is a closer issue than the first, I am constrained to conclude that, although the ALJ certainly could have done a better job in developing evidence about Plaintiff's former work, there is adequate evidence to support his determination that Plaintiff retained the functional capacity to perform his past relevant work as a cook as that job is performed generally in the national economy.[14] First, contrary to Plaintiff's allegations, the ALJ relied on the DOT. In particular, the ALJ cited to § 315.361-010, which describes "cook, any industry," and is medium exertional work.[15] DOT § 315.361-010 (1991). That particular job, as performed generally, is consistent with the ALJ's determination of Plaintiff's physical exertional capacity. As for Plaintiff's mental capacity, the job does not appear to have mental demands that exceed the restrictions found by the ALJ, namely, more than occasional exposure to the public or the ability to carry out detailed instructions and tasks. Notably, Plaintiff does not specifically object to the ALJ's mental (or physical) residual functional

---

[14]In the SSA forms Plaintiff completed with his application for benefits, he indicated that his work as a short order cook required lifting more than 50 pounds on a frequent basis and standing/walking for 8 to 10 hours a day. (R. 108, 149). These exertional demands exceed those found by the ALJ. *Compare* (R. 108, 149) *with* (R. 22). As such, the ALJ erred in finding that Plaintiff retained the functional capacity to perform his past work as a cook as he previously performed it.

[15]While the job description set forth therein may not best describe Plaintiff's work as a cook, it clearly subsumes it. In any event, Plaintiff does not contend otherwise. Further, the other cook-type jobs in the DOT are similar in that they are medium exertional work. *See, e.g.,* DOT §§ 313.361-014 (cook, hotel and restaurant industry), 313.374-010 (fast food cook, hotel and restaurant industry). Thus, any error in this regard is harmless. Notably, the job identified in the DOT as "short order cook" is considered light exertional work and does not appear to describe the job as Plaintiff did as it involves fairly significant customer interaction. *See* DOT § 313.374-014.

16

assessment on appeal.[16] Although Plaintiff appears to contend that the mental requirements of the job (or that of § 313.361.014) exceed his ability in light of the job's SVP, I disagree. As the Commissioner asserts, "[s]pecific vocation preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."[17] 1991 WL 688702 (G.P.O.). Regardless of utilizing the job identified by the ALJ (§ 315.361-010, SVP 6) or assumed by the Plaintiff (§ 313.361-014, SVP 7), his years of experience in working as a cook are more than sufficient to meet the SVP levels of 6 ("over 1 year up to and including 2 years") or 7 (over 2 years up to and including 4 years) required for either job given that he worked as a cook from 1995 to 2003. *See* 1991 WL 688702. Further, as for the aspect of Plaintiff's assertion relating to "the abilities to make judgments and decisions; attaining precise set limits, tolerances, and standards; and the ability to perform a variety of tasks and duties," I find that it need not be addressed on the merits. Importantly, Plaintiff previously was advised:

> The Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged. Moreover, any such discrete challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards. Any contention for which these requirements are not met is subject to being disregarded for insufficient development.

---

[16]While Plaintiff notes that the state agency consultants opined he would have moderate difficulty in accepting instructions and responding appropriately to criticism from supervisors, the ALJ did not fully credit those limitations and Plaintiff does not challenge the weight the ALJ accorded their opinions.

[17]This training may be acquired in a vocational environment. DOT Append. C, 1991 WL 688702 (G.P.O.).

Sched. Order (Doc. 12). Here, Plaintiff fails to develop his argument with respect to variety, tolerances, and judgments and cites no governing authority in support of his assertion that those factors preclude his ability to perform past relevant work. Importantly, Plaintiff cites no authority demonstrating that those factors equate with the mental demands of the job. In any event, my brief research on this issue reveals that they do not.[18] Finally, as the Commissioner notes, the testimony of a VE is not required at step four. *See Bliss v. Comm'r of Soc. Sec.*, No. 07-12136, 2007 WL 3333169, at *1 (11th Cir. 2007) (unpublished); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); *but see* SSR 82-61, 1982 WL 31387, *2 (S.S.A.) (recognizing that a VE may be appropriate at step four). As such, an ALJ's failure to obtain VE testimony when determining a claimant's ability to perform past work does not constitute reversible error. Consequently, while the ALJ in this case may have benefitted from such, he did not err by failing to do so.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

---

[18]*See, e.g., Veal v. Soc. Sec. Admin.*, __ F. Supp. 2d __, 2009 WL 1449081, at *7 (E.D. Tex. 2009) (referring to the 1991 Revised Handbook for Analyzing Jobs (RHAJ), which identifies various factors important to adjustments workers must make for successful job performance, including a factor designated as "Temperaments," which consist of 11 separately identified temperament factors identified for use in job analysis). Three of these factors are those cited to by Plaintiff and included in the job descriptions: V - performing a VARIETY of duties; T - attaining precise set limits, TOLERANCES, and standards; and J - making JUDGMENTS and decision. *See* U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs 10-1 (1991).

otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 27th day of July 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record